UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-54-KSF

NATIONWIDE MUTUAL INSURANCE CO.                                          PLAINTIFF

vs.                                    **OPINION AND ORDER**

ROBERT BURKE                                                              DEFENDANT

* * * * * * * *

      This matter is before the Court on the motion of Nationwide Mutual Ins. Co. ("Nationwide")
for summary judgment and a declaration that its policies did not provide underinsured motorist
benefits for Robert Burke's motorcycle accident.  For the reasons discussed below, the motion will
be granted.

## I.    BACKGROUND

      The essential facts in this matter are not in dispute.  Robert Burke suffered a motorcycle
accident on July 23 or 24, 2009, and was significantly injured.  Robert settled his claim against the
tortfeasor, Charles Willis, for Willis' $25,000 policy limits.  The motorcycle was owned by Larry and
Bernece Burke, Robert's parents, and they insured it under a policy issued by Dairyland Insurance
Co.  The Dairyland policy did not include underinsured motorist coverage.  Robert insured a
separate motorcycle that he owned through Progressive Northern Insurance Co. and paid for
underinsured motorist coverage.  Progressive also made payment for the accident.

      Robert now seeks underinsured motorists benefits from Nationwide.  Nationwide had issued
to Bernece Burke, Robert's mother, and/or to Burke's General Carpentry three policies, a General
Liability Policy, a Commercial Umbrella Policy, and a Business Auto Policy.  In its motion for
summary judgment, Nationwide argued that various exclusions precluded any possibility of
underinsured motorists coverage under the General Liability and Commercial Umbrella policies.

[DE 23, pp. 5-7]. Burke wisely did not take issue with this argument in his response. Instead, he focused on a claim of coverage through the Business Auto policy. [DE 34, pp. 2-7]. In particular, Robert argues he is an insured on the policy because he is a "family member." Because the policy defines family member as someone who is a resident of a "named insured's household," Robert urges this court to give an expansive meaning to the term "household."

Robert lives in a house located seven hundred feet from his parents' house, which his parents have occupied for twenty-five years. [DE 34, Ex. 1, Declaration of Robert Burke]. Robert owns the land on which his house is located, but it can only be accessed through his parents' land. Robert lives in his house with his girlfriend and his children, but he says they spend a great deal of time at his parents' house, even though they "sleep under separate roofs." *Id.* at 2. Robert and his parents have the same residential address, 140 Clevis Springs Road, Irvine, Kentucky. Robert says his parents run their carpentry business from that address and that he worked for them until his motorcycle crash. *Id.* at 1. The business receives its mail at a different address, 911 Pea Ridge Road, Irvine, Kentucky. *Id.*

In his Answer to the Amended Complaint, Robert admits that he never resided at 911 Pea Ridge Road, Irvine, Kentucky. [DE 10, ¶ 12]. He admits that "he did not reside under the same roof with Bernece Burke...." *Id.* at ¶ 13. In response to a request for admission, Robert admits that the 2009 Harley he was riding was not specifically referenced in any Nationwide policy. [DE 23, p. 3].

The Nationwide Business Auto Policy (No. 63 BA 262 619 3002) was issued to "Bernece Burke, DBA Burkes General Carpentry, 911 Pea Ridge Road, Irvine, KY 40336." [DE 1-5]. On the Schedule of Coverages and Covered Autos, the policy says:

> This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos."

[DE 1-5, p. 5]. The "Schedule of Covered Autos You Own" lists only a "98 Ford Econoline." *Id.*, p. 7.

Regarding the "Individual Named Insured," the policy provides:

> B.     Personal Auto Coverage
> If any "auto" you own of the "private passenger type" is a covered
> "auto" under Liability Coverage:
> a.     The following is added to Who Is An Insured:
> "Family members" are "insureds" for any covered
> "auto" you own of the "private passenger type"....

*Id.*, p. 19.  "Family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household...."  *Id.*

## II.     ANALYSIS

### A.     Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment.  *Id.* at 343.  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be

insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

**B.**     **Interpretation of the Insurance Policies**

"It is well settled that the interpretation of contracts is an issue of law for the court to decide. The intention of the parties to a written instrument must be gathered from the four corners of that instrument." *Equitania Ins. Co. v. Slone & Garrett, P.S.C.,* 191 S.W.3d 552, 556 (Ky. 2006) (citations omitted).

Plaintiff argues that the Supreme Court of Kentucky "has not spoken at all" regarding the interpretation of "household" for purposes of an insurance policy such as this. [DE 34, p. 3]. He relies on authority from other jurisdictions to argue that the term "household" is ambiguous and should be liberally construed in favor of the insured. *Id.* at 4.

In applying state law, a district court is to "anticipate how the relevant state's highest court would rule in the case and [is] bound by controlling decisions of that court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). "Intermediate state appellate courts' decisions are also viewed as persuasive unless it is shown that the state's highest court would decide the issue differently." *Id*.

While it is true that the closest cases on point are from the Court of Appeals of Kentucky, not the Supreme Court, Plaintiff has made no showing that the Supreme Court would decide the issue differently. His argument, based on other jurisdictions, has been repeatedly rejected by Kentucky's intermediate court.

In *Sutton v. Shelter Mutual Ins. Co.*, 971 S.W.2d 807 (Ky. Ct. App. 1997), the court was interpreting a farmowner's policy that defined "insured" as "you" and "your relatives residing in your household." *Id.* at 808. The policy was issued to Elliot Finley, who lived in a house with his wife and younger children on a farm. Elliot's 26-year-old son, Kelly, lived in a mobile home on Elliot's

farm.  *Id.*  Kelly injured a young girl when he ran over her with a farm wagon.  Rejecting an

argument that "household" is ambiguous and could include Kelly's mobile home, the court said:

> Appellants stress that "household" is not limited to one dwelling and cite various
> cases from foreign jurisdictions which have decided the matter in a manner which
> would favor them.  We disagree with appellants' argument.
>
> In our opinion, the term "household" is unambiguous and easily enough understood.
> The mere fact that the appellants attempt to muddy the water and create some
> question of interpretation does not necessarily create an ambiguity.  Terms used
> within insurance contracts "should be given their ordinary meaning as persons with
> the ordinary and usual understanding would construe them."  ...  The trial court's
> determination is in keeping with cases in which this Court has defined "household"
> as "persons dwelling together as a family under the same roof."

*Id.*, citations omitted.  Thus, Kelly, whose mobile home was located on his parents' property where

they lived in a different house, did not reside in his parents' "household" and was not an insured.

*Sutton* relied on *Kentucky Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928 (Ky. Ct. App.

1991) and *Hanover Ins. Co. v. Napier*, 641 S.W.2d 47 (Ky. Ct. App. 1982).  In *Gray*, Doyle Gray

was seeking uninsured motorist coverage under his mother's policy.  Doyle lived with his wife in

a mobile home adjacent to his parents' house.  The property on which both homes were located

was rented to his parents by his cousin.  In rejecting a claim that Doyle was a member of his

mother's household, the court said:

> In Kentucky the term "household" has, for insurance purposes, been generally
> defined as "persons dwelling together as a family under the same roof." *Hanover
> Insurance Co. v. Napier*, Ky. App., 641 S.W.2d 47 (1982).  We are aware that this
> term is, in many jurisdictions, considered unambiguous and therefore liberally
> construed in accordance with the policy of interpreting unclear terms in favor of the
> insured.  However, even a generous interpretation of the facts in the case at bar
> cannot yield the result desired by Doyle.  At the time of the accident he was married
> and living physically apart from his parents on land not owned by them. ... Thus, we
> believe the trial court erred in concluding that Doyle was a member of Shirley Gray's
> household.

*Id.* at 929.

In *Napier*, the liability insurance coverage issued to the parents extended to "relatives of the

named insured residing in their household."  *Napier*, 641 S.W.2d at 47.  The son lived in the former

home of his parents in Louisville after they moved to Wax, Kentucky. Son sought coverage for the injury he caused to a third party. The court said:

> We are unaware of any case decided by a Kentucky court interpreting the word "household" so as to indicate whether it can encompass more than one dwelling, and neither party to this case has cited any Kentucky case on the issue. The parties primarily base their arguments on out-of-state authorities. Although there is authority for the position that "household" can refer to more than one dwelling, in examining the law we find that the majority of cases hold that the word household applies to persons dwelling together as a family under the same roof. We adopt this majority view....

*Id.* at 48, citations omitted.

A more recent decision of the Court of Appeals of Kentucky reiterates the applicability of *Sutton*. In *Grimes v. Smith*, 2005 WL 3442938 (Ky. Ct. App. 2005) (unpublished), Nationwide issued a homeowner's policy to Connie Smith's mother. Connie lived with her mother in Louisville for a time, but her mother moved to a separate residence, and Connie remained in her mother's house. Connie argued she was a member of her mother's household and, thereby, an "insured" under the policy. The court said:

> It is equally clear from the undisputed facts of the instant case that Ms. Smith was not living together with her mother under the same roof, but was merely occupying a separate residence owned by her mother. We find this situation indistinguishable from the rationale expressed in *Sutton*. The facts as alleged by appellant require us to concur in the trial judge's assessment that Ms. Tincher and Ms. Smith had established separate households in separate locations and therefore they were not living as a family under the same roof. To conclude otherwise would require us to "abandon common sense."

*Id.* at *2. *See also, Anglian v. Allstate Ins. Co.,* 2006 WL 544286 (E. D. Ky. 2006) (Homeowners policy provided coverage for a relative "if a resident of your household," but did not apply to a son living in his mother's mobile home while she lived in another town).

It is the opinion of this Court that Kentucky law interpreting "household" for purposes of insurance coverage has been quite clear for nearly three decades. The term is not ambiguous. *Sutton*, 971 S.W.2d at 808. Household is defined as "persons dwelling together as a family under the same roof." *Id.; Napier*, 641 S.W.2d at 48. There is no meaningful distinction between the

facts of the present case and the facts of *Napier, Gray* or *Sutton.* In those three cases, the child was living in close proximity to the parents, but dwelling under a separate roof. As a result, the child was not an "insured" under the parents' policy. The same is true for Robert Burke, who admitted that "he did not reside under the same roof with Bernece Burke."

**III.** **CONCLUSION**

**IT IS ORDERED** that the motion of Nationwide Mutual Insurance Company for summary judgment in its favor [DE 23] is **GRANTED**. Judgment in favor of the Plaintiff Nationwide will be entered contemporaneously with this Opinion.

This March 18, 2011.

**Signed By:**

*Karl S. Forester* $K S F$

**United States Senior Judge**